UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ROBERT AHDERS, ET AL.  CIVIL ACTION

VERSUS

SEI PRIVATE TRUST CO., ET AL.  NO.: 16-00801-BAJ-EWD
C/W NO.: 19-00353-BAJ-EWD

RULING AND ORDER

Before the Court is Defendants SEI Investments Company and SEI Private Trust Company's (collectively "SEI") **Motion for Summary Judgment (Doc. 55)**. Plaintiffs filed a Response in Opposition (Doc. 56). For the reasons stated herein, SEI's **Motion (Doc. 55) is GRANTED**.

I.  BACKGROUND

Much of this case covers familiar territory. The claims brought here are factually and structurally nearly identical to those that the Court dismissed in *Lillie v. Stanford Trust Co., et al.* As was the case in *Lillie*, the issue presented concerns SEI's liability under the control-person provision of the Louisiana Securities Law, which holds anyone who directly or indirectly controls a direct violator of Louisiana Securities Law under La. Stat. Ann. § 51:712(A) to be liable to the same extent as the direct violator, unless the secondary violator sustains the burden of proof that they did not know, and in the exercise of reasonable care could not have known, the

existence of the facts by reason of which liability is alleged to exist. LA. STAT. ANN. § 51:714(B).

This dispute stems from the litigation surrounding R. Allen Stanford's Ponzi scheme. *See Janvey v. Brown*, 767 F.3d 430, 433–34 (5th Cir. 2014) (describing the scheme). Stanford sold fraudulent certificates of deposit (CDs) through his Antigua-based Stanford International Bank Ltd. (SIBL). *Id.* at 433. Stanford promised investors that proceeds would be placed in low-risk, high return investments, but instead utilized those proceeds to pay earlier investors their promised returns. *Id.* Plaintiffs allege that the primary violator, R. Allen Stanford's Stanford Trust Company ("STC"), was created for the "primary purpose of serving as the custodian for investors' IRA accounts." (Doc. 1 at ¶ 3). The asserted primary violations here are the same as those in *Lilile*—that Stanford Trust Company sold fraudulent SIBL CDs and created bogus CD values. *Id.* at ¶ 96.

Plaintiffs are former members of the class in *Lillie* who chose to opt out of the *Lillie v. Stanford Tr. Co.*, No. 3:13-CV-03127-N, 2016 WL 10591374 (N.D. Tex. May 2, 2016) action in the Northern District of Texas and subsequently brought suit here. (Doc. 1 at ¶¶ 4–5). Plaintiffs are individuals for whom STC, the primary violator, allegedly purchased or renewed SIBL CDs in Louisiana between January 1, 2007 and February 13, 2009. *Id.* Plaintiffs pursued their claims separately in this action, which was then transferred from the Northern District of Texas to this Court. *See* (Doc. 79 in Case No. 3:19-cv-353). Plaintiffs initially brought claims alleging SEI was liable under Louisiana Securities Law § 712, § 714(A), and § 714(B), but ultimately

2

abandoned the first two. *See* (Doc. 49 in Case No. 3:19-cv-353). Only the § 714(B) control claim, which aims to impose joint and several liability, remains.

Defendant SEI Private Trust Company is a limited purpose federal savings association and wholly owned subsidiary of SEI Investments Company. *See* (Doc. 18 in Case No. 3:19-cv-353). STC contracted with SEI, whom STC understood to be a "large trust company that had a well-developed operations system," in order to facilitate the operational functionality of STC, including handling back office operations. (Doc. 56–8, at p. 4–5).

Now, SEI moves for summary judgment. SEI argues that Plaintiffs cannot prove the control element of their § 714(B) claim, because the contract that governed SEI's relationship with STC demonstrates that SEI could not control STC's primary violations of the Louisiana Securities Law (Doc. 55–1 at p. 2). That contract characterizes SEI as an "independent contractor" (55–10 at p. 78). Notably, the contract carves out the right to price non-marketable securities, like the SIBL CDs, for STC, not SEI. *Id.* at 93. Further, the contract makes STC "solely responsible for the completeness of any data" provided to SEI under the contract. *Id.* at 80.

## II. LEGAL STANDARD

Pursuant to Rule 56, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1968). A fact is "material" if it "might affect the outcome of the suit." *Id.* at 248.

In determining whether the movant is entitled to summary judgment, the Court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an *actual controversy*, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted) (emphasis added).

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citation omitted).

Plaintiffs' remaining claim arises under § 714(B) of the Louisiana Securities Law. Liability under § 714(B) hinges on whether SEI directly or indirectly controlled STC's primary violations of the Louisiana Securities Law. That provision creates liability for a person who "controls" a person liable under § 714(A) of the Louisiana Securities Law:

> Every person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and

4

> every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the person liable under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist. There is contribution as in the case of contract among several persons so liable.

LA. REV. STAT. § 51:714(B). The Louisiana Securities Law defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." LA. REV. STAT. § 51:702(4). Because Louisiana control-person precedent is "thin," the Court "look[s] to federal law for instruction." *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014).

Applied here, § 714(B) makes SEI liable for STC's violations of the Louisiana Securities Law if SEI "directly or indirectly control[led]" STC. *See Triche*, 775 F.3d at 283. Plaintiffs need not prove that SEI participated in the fraudulent transaction. *See Id.* (citing *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981)). They must, however, "show that [SEI] had an ability to control the *specific transaction or activity* upon which the primary violation is based." *Id.* at 283 (citation omitted) (emphasis added).

## III. DISCUSSION

Plaintiffs emphasize the "intensely factual" nature of determining whether a party is a control person, but ultimately fail to provide evidence that would include such facts. (Doc. 56, at p. 2). To support their argument that SEI controlled STC under

5

L.S.L. § 714(B), Plaintiffs allege that SEI fulfilled back-office functions for STC, including "order processing, accounting, reporting to clients, reporting to the IRS, and reconciliation." (Doc. 56–3 at ¶¶ 22, 24, 25). Plaintiffs further allege that the "only way" for an STC client to hold the SIBL CD in his IRA account was through the SEI platform. *Id.* at ¶¶ 28–30.

Much of the analysis of Plaintiffs' claims is familiar from *Lillie*. In fact, the only meaningful addition here is Plaintiffs' more specific allegation of a close relationship between STC and SEI premised upon STC outsourcing its back-office work to SEI. Two affidavits, by James D. Perry, a founder of STC, and Gary Layfield, a trust officer at STC, are offered to corroborate this relationship. However, neither affidavit provides a description of the dispute of material fact necessary for Plaintiffs to survive summary judgment. The relationship between STC and SEI is detailed in a contract, included in SEI's pleadings, which addresses SEI's inability to directly control STC's primary violations. Upon review, Plaintiffs' affidavits only serve to confirm that STC was a small company that outsourced its operations tasks.

In his affidavit, Perry stated that he and Mr. Layfield, the only other trust officer at STC, could not take on operational responsibilities as trust officers. (Doc. 56-8, at p. 3). Perry also stated that establishing operations would take "tremendous resources" and could require a sizable group and expertise. *Id.* at 3–4. As a small company with two trust officers and few employees, Perry opted to outsource operations to a "large trust company with a well-developed operations system" rather than attempt to build an in-house operations group. *Id.* at 4. Perry stated that while

6

SEI provided the operational functionality of STC, they did not have responsibility for product creation. *Id.* at 5. Neither affidavit alludes to any control SEI had over SIBL CD valuation.

As discussed *supra*, the contract between SEI and STC explicitly carved out the asset-valuing conduct that constitutes the primary violations underlying Plaintiffs' claims. Specifically, the sale and holding of SIBL CDs in IRA accounts, as well as the valuation of the SIBL CDs, was allocated to STC. (55–10 at p. 93). Plaintiffs' pleadings contain no evidence demonstrating that the relationship between the companies differed from that contemplated in the contract. The affidavits submitted by Plaintiffs address SEI's handling of operations, but only with respect to day-to-day business activities that do not implicate Louisiana Securities Laws. Therefore, SEI has met its initial burden of pointing to the absence of evidence supporting the control element of Plaintiffs' § 714(B) claim. *See In re La. Crawfish Producers*, 852 F.3d at 462. The burden now shifts to Plaintiffs to "demonstrat[e] by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* Plaintiffs fail to sustain this burden.

Plaintiffs correctly state that, as non-movants, they are entitled to all reasonable inferences from the evidence. They proceed to argue that it is reasonable to infer that because "SEI had the ability to deny its platform to the SIBL CD, it therefore had the power to impose other, lesser restrictions on the SIBL CD." (Doc. 56, at p. 5). This ambitious inference is effectively countered by the factual showing of evidence provided in the governing contract, combined with Plaintiffs' failure to

submit any evidence that could be construed as indicating conduct violating the terms of the contract or otherwise showing SEI could control STC. Plaintiffs' contention that SEI should have known of the violations but failed to perform due diligence before reporting the value of the SIBL CDs is beside the point. (Doc. 1, ¶ 56). As stated plainly in *Lillie*, due diligence is not relevant to the threshold question of control, and only comes into play after a defendant is adjudged a control person under § 714(B). *Lillie v. Stanford Tr. Co.*, No. CV 13-150-BAJ-EWD, 2019 WL 2996915, at *6 (M.D. La. July 9, 2019), *reconsideration denied*, No. CV 13-150-BAJ-EWD, 2019 WL 3849154 (M.D. La. Aug. 15, 2019).

Subsequent arguments in Plaintiffs' Complaint similarly overlook the definition and test for control. These arguments include that SEI was "inextricably intertwined" with STC based on STC's need to outsource their operations requirements (Doc. 1, ¶ 27); SEI's "cradle-to-grave" trust management (Doc. 1, ¶ 29); custodial responsibilities stemming from the role SEI played in sale and marketing of the SIBL CDs (Doc. 1, ¶ 35); and SEI's "respected brand name" lending recognition and credibility to STC in support of their sales efforts (Doc. 1, ¶ 50). However, long-term business relationships alone do not constitute a violation of § 714(B). *See* LA. REV. STAT. § 51:702(4); *Triche*, 775 F.3d at 283. Plaintiffs' arguments seeking to demonstrate control amount to little more than conjecture, and SEI has satisfied its burden. Summary judgment is appropriate.

Lastly, Plaintiffs have named several insurance companies as defendants (the "Insurer Defendants") in this action and have brought claims against them under Louisiana's Direct Action Statute, LA. REV. STAT. § 22:1269. (Doc. 1 at ¶¶ 116–120).

The Direct Action Statute does not create an independent cause of action. *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 850 (5th Cir. 2019) Because the Court is dismissing Plaintiffs' sole substantive cause of action against SEI, the insured in this case, the claims under Louisiana's Direct Action Statute will necessarily fail. *See Marsh Eng'g Inc. v. Parker*, 2004-0509 (La. App. 3d Cir. 9/29/04); 883 So. 2d 1119, 1127 ("When the injured party's substantive cause of action against the original tort feasor [*sic*] is extinguished, the procedural right of direct action against the insurer, which is purely remedial and ancillary to the cause, must fall by operation of law.") However, because the Insurer Defendants did not join SEI in their motion for summary judgment, the Court cannot grant summary judgment in their favor without affording Plaintiffs "notice and a reasonable time to respond." FED. R. CIV. P. 56(f).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that SEI's **Motion for Summary Judgment (Doc. 55)** is **GRANTED**. Plaintiffs' claims against SEI Investment Company and SEI Private Trust Company are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs shall show cause, in writing and within **10 days**, why the Court should not grant summary judgment in favor of the Insurer Defendants and thereafter enter final judgment in accordance with Federal Rule of Civil Procedure 58. If Plaintiffs fail to timely respond, the Court will, on its own motion, enter summary judgment in the Insurer Defendants' favor.

Baton Rouge, Louisiana, this 24th day of January, 2020.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA